THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JONG GIL LEE, NAMLEE KIM and MUN SU PARK, Administrator of the Estate of Himchan Lee,<br><br>Plaintiffs,<br><br>vs.<br><br>MARIANAS PROPERTIES LLC dba PACIFIC STAR RESORT & SPA, DONGBU INSURANCE COMPANY LTD., and DOES 1 through 20,<br><br>Defendants. | CIVIL CASE NO. 19-00153<br><br>DECISION AND ORDER RE DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Before the court is Defendants Marianas Properties LLC and Dongbu Insurance Company, LTD.'s Motion for Partial Summary Judgment. *See* Mot., ECF No. 30. The motion is fully briefed, and the court deems it suitable for submission without oral argument. For the reasons stated herein, the court hereby **DENIES** in part and **GRANTS** in part Defendants' Motion for Partial Summary Judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND[1]

    a. Procedural Background

On December 30, 2019, Plaintiffs Jong Gil Lee and Namlee Kim filed the instant suit

---

[1] The page numbering throughout this order is based on the CM/ECF numbering system.

1

against Defendants Pacific Star Resort & Spa, Marianas Properties LLC, and DOES 1 through 20 for the wrongful death of Decedent Himchan Lee. *See* Compl., ECF No. 1. The Complaint was subsequently amended to include the Estate of Himchan Lee ("Estate") as Plaintiff and naming the following Defendants: Marianas Properties LLC dba Pacific Star Resort & Spa ("Pacific Star"), Dongbu Insurance Company, LTD. ("Dongbu"), and DOES 1 through 20.[2] *See* Am. Compl., ECF No. 13. On September 1, 2021, Defendants filed an Answer to the Amended Complaint. *See* Answer, ECF No. 16.

The Amended Complaint alleges the following causes of action: Negligence; Res Ipsa Loquitor; Direct Action Against Insurer Dongbu, which had issued policies of insurance for the hotel that were in force and effect on the date of the alleged drowning; and Direct Action Against Principals and Employers Based Upon Agency Liability and/or Respondeat Superior. *See* Am. Compl. at 6-10, ECF No. 13.

On December 28, 2022, Defendants filed the instant motion for partial summary judgment. *See* Mot., ECF No. 30. Plaintiffs filed an Opposition on January 25, 2023, and Defendants filed a Reply on February 8, 2023. *See* Pls.' Opp'n, ECF No. 35; and Reply, ECF No. 41.[3]

Plaintiffs filed a motion for leave to file a Second Amended Complaint. *See* ECF No. 50. That motion was denied on September 30, 2023, ECF No. 62; and thus, the court now issues its decision on the instant motion.

**b. Factual Background**

On August 6, 2019, Decedent Himchan Lee, a 27-year-old male, drowned in a swimming

---

[2] Mun Su Park was substituted as co-plaintiff for the Estate of Himchan Lee. *See* Order, ECF No. 42.

[3] The court found it judicially efficient to encourage the parties to first appear before a settlement judge, before issuing its decision on the partial summary judgment motion.

pool on the premises of Pacific Star. *See* Am. Compl. at 5, ECF No. 13 and Lee Decl. at ¶ 3, ECF No. 38. No lifeguard was on duty at the time and when an employee pulled Decedent out of the pool, he was unresponsive. *See* Am. Compl. at 6, ECF No. 13. No emergency aid was rendered by Pacific Star employees. *Id.* at 5-6. Decedent was transported to Guam Memorial Hospital Authority and pronounced dead at around 5:47 p.m. *Id.* at 6. Decedent's cause of death was determined to be asphyxia due to drowning. *Id.*

Decedent was a resident of South Korea. *Id.* at 8. His parents and sole survivors, Mr. Lee and Mrs. Kim, are also residents of South Korea. *Id.* at 2. Pacific Star is a limited liability company located and having its principal place of business in Guam. *See* Answer at ¶ 5, ECF No. 16. Dongbu is an insurance company authorized to do business in Guam and that issued a liability policy to Pacific Star, which was in effect on August 6, 2019. *Id.* at ¶ 6.

## II. JURISDCITION AND VENUE

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(a), because Plaintiffs and Defendants are diverse and Plaintiffs are seeking over $75,000.00 in damages. Plaintiffs Mr. Lee and Mrs. Kim are South Korean residents.[4] Defendants Pacific Star and Dongbu are citizens of Guam, Pacific Star is a limited liability company located and having its principal place of business in Guam, and Dongbu is an insurance company authorized to do business in Guam and that issued a liability policy to Pacific Star.[5] 28 U.S.C. 1332(a), (c)(1), and (c)(1)(a).

Venue is proper in this judicial district, the District Court of Guam, because all of the

---

[4] Mr. Park, the legal representative of the Estate, is deemed to be a citizen of South Korea, the same citizenship as the Decedent, pursuant to 18 U.S.C. 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . .").

[5] A corporation is deemed a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). With respect to a direct action against an insurer of a policy or contract of liability insurance, "whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen." 28 U.S.C. § 1332(c)(1)(A).

3

events giving rise to Plaintiffs' claims occurred in this district. 28 U.S.C. § 1391(b)(2).

**III. SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56, there is a "shifting burden of proof" on a motion for summary judgment brought by a defendant against a plaintiff's claims. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). As set forth by the Ninth Circuit in *In Re Oracle*,

> [t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387.

"'[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'" *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir.2007) (quoting *Gasperini v. Ctr. For Humanities, Inc.,* 518 U.S. 415, 427 (1996)). This is a diversity case. Therefore, the court will apply Guam law with respect to matters of substantive law, while applying federal law to procedural matters.

The "adoption of a statute of one jurisdiction by another carries with it the judicial interpretation of the statute arrived at by the first jurisdiction." *Vela v. Gov't Employees Ins. Co.*, 395 F.2d 437, 439 (9th Cir. 1968) (citing *Carolene Products Co. v. U.S.*, 323 U.S. 18, 26 (1944);

4

*Diamond Nat. Corp. v. Lee*, 333 F.2d 517, 526 (9th Cir. 1964); *Palakiko v. Harper*, 209 F.2d 75, 102 (9th Cir. 1953), *cert. denied*, 347 U.S. 956 (1954)). The relevant Guam codes here were adopted from California codes and therefore, this court will use caselaw from California state courts.

## IV. DISCUSSION

Defendants seek partial summary judgment. *See* Mot., ECF No. 30. First, Defendants argue that the Estate is not entitled to recover damages for pain, suffering, disfigurement, punitive or exemplary damages, prospective profits, or earnings after the date of death under 19 GCA § 31104. *See* Defs.' Mem. at 7-9, ECF No. 30-1. Second, Defendants argue Decedent's sole heirs, Mr. Lee and Mrs. Kim, are only entitled to recover damages under 7 GCA § 12109 for the loss of comfort, protection, and society of Decedent but not for pecuniary losses. *Id*. at 9-11. Third, Defendants also ask that if Pacific Star is granted partial summary judgment, Dongbu should also be granted partial summary judgment. *See* Defs.' Mem. at 11, ECF No. 30-1.

### a. Defendants' Argument Pursuant to 19 GCA § 31104, as to Pain and Suffering, is Moot.

Defendants argue that pursuant to 19 GCA § 31104,[6] the Estate may only collect damages for loss of earnings and expenses sustained or incurred because of the death of Decedent and not for the pain, suffering, disfigurement, punitive or exemplary damages, prospective profits, or earnings after the date of death. *See* Defs.' Mem. at 8, ECF No. 30-1.

Plaintiffs withdrew their claims for pain and suffering of Decedent. Pls.' Opp'n at 6, ECF

---

[6] Section 31104 of Title 19, Guam Code Annotated, provides in part that,

> [w]hen the person entitled to maintain such an action dies before judgment, damages recoverable for such injury shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and shall not include damages for pain, suffering or disfigurement, nor punitive or exemplary damages, nor prospective profits or earnings after the date of death. The damages recovered shall form part of the estate of the deceased.

5

No. 35. Plaintiffs also acknowledged that the Estate is not entitled to damages for disfigurement. *See id.* at 14-15. As Plaintiffs withdrew their claims for pain and suffering, the court finds Defendants' argument on this issue MOOT.

### b. Punitive and/or Exemplary Damages

The court will next address whether Decedent's Estate is entitled to punitive or exemplary damages. Defendants argue that 19 GCA § 31104 explicitly excludes it. *See* Reply at 4-5, ECF No. 41. Plaintiffs, on the other hand, argue that 15 GCA 2209 explicitly allows it. *See* Pls.' Opp'n at 17-18, ECF No. 35. Plaintiffs argue 19 GCA § 31104 does not apply because it was enacted in 1966, and 15 GCA § 2209 was enacted in 1982, and the statute enacted later in time controls under California law. In response, Defendants argue that Plaintiffs may not assert punitive damages claim because 20 GCA § 2120 requires a party seeking punitive damages to provide facts that support a finding of "oppression, fraud, or malice, express or implied" and Plaintiffs have failed to plead any facts supporting punitive damages claim. *See* Reply at 6, ECF No. 41. Additionally, Defendants argue that Plaintiffs have failed to provide a computation of punitive damages as required by Fed. R. Civ. P. 26(a)(1)(A)(iii). *Id.*

The court need not address Plaintiffs' argument as to which statute controls here. The Supreme Court of Guam has held that "punitive damages . . . are aimed at deterrence and retribution." *Park v. Mobil Oil Guam, Inc.*, 2004 Guam 20 ¶ 13 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). Section 2120 of Title 20, Guam Code Annotated, provides plaintiffs with the ability to seek punitive damages "[i]n an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." However, "[a] request for punitive damages is not a separate cause of action and can only be awarded based on

a finding of liability for an underlying claim." *Nat'l Union Fire Ins, Co. of Pittsburgh, Pa. v. Guam Hous. & Urb. Renewal Auth.*, 2003 Guam 19 ¶ 50. *See also* 1 PUNITIVE DAMAGES: LAW AND PRAC. 2d § 6:16 ("Punitive damages are not awarded as an independent theory of recovery.").

To recover punitive damages, a party must assert facts that support the argument that the opposing party has acted expressly or impliedly in an oppressive, fraudulent, or malicious manner with respect to the tort being claimed. *See* 20 GCA § 2120. Here, Plaintiffs' amended complaint is based on a claim of negligence, which is an unintentional tort, and negligence alone is not enough to prove punitive damages. *Donnelly v. S. Pac. Co.*, 118 P.2d 465, 468-69 (Cal. 1941) (holding that negligence is not an intentional tort and that punitive damages are justified when a tort is considered "wonton and reckless" as it is "more closely akin to willful misconduct than to negligence, and it has most of the legal consequences of willful misconduct."); *see also In re Plyam*, 530 B.R. 456, 466 (B.A.P. 9th Cir. 2015).

Accordingly, the court grants partial summary judgment in favor of the Defendants with respect to Plaintiffs' claim for punitive damages on behalf of the Estate.

### c. The court finds that the heirs may be entitled to damages under 7 GCA § 12109.

#### i. Sham Affidavit Rule

Before the court touches on the issue of Section 12109, the court must first discuss the Sham Affidavit Rule. Defendants argue that there is a clear contradiction between Mr. Lee's deposition and declaration, thereby invoking the "sham affidavit rule." *See* Reply at 4, ECF No. 41.

The Ninth Circuit has established two guideposts when the "sham affidavit rule" is invoked. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2008). The first is that the court must make a factual determination that there is an actual "sham" created by the

7

contradiction and, second, the inconsistencies between the deposition and an affidavit or declaration must be unambiguous to justify striking a declaration. *Id.* at 998-99.

In *Van Asdale*, the Ninth Circuit emphasized that although a party who submits an affidavit that conflicts with prior testimony would "diminish the utility of summary judgment as a procedure for screening out sham issues of fact[,]" it must be noted that the "sham affidavit rule is in tension with the principle that the court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." 577 F.3d at 998 (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). The Ninth Circuit warned against "[a]ggressive invocation" of the "sham affidavit rule" that stands to threaten parties who may have "simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Id.* Therefore, courts should be cautious when applying the "sham affidavit rule." *Id.*

After a review of the record, it is evident that Mr. Lee was confused during the deposition. Mr. Park noted that the confusion during Mr. Lee's deposition was due to the incorrect interpretation by Mr. Lee's interpreter from Korean to English. *See* Ex. D to Berman Decl. at 45, ECF No. 37. During Mr. Lee's deposition, when Defendants' counsel asked Mr. Lee about how much allowance he gave Decedent and how much allowance Decedent gave to Mr. Lee and Mrs. Kim, Mr. Park interrupted and stated, "I think there are misinterpretation[s] about . . . Mr. Johnson's question and Mr. Lee's question. Basically, [Mr. Lee's] answer is consistent but a little bit of confusion about, you know, who gave how much. That issue. So I think we got misunderstood on the matter." *Id.* at 45. Mr. Park also noted "I think you have to ask the question again. You know, I am listening . . . the Korean version is correct, but the English version is not correct." *Id.* at 45-46.

After being asked the question correctly, Mr. Lee then made clear that he and Mrs. Kim

8

gave Decedent 300,000 Won[7] per month and that Decedent would give his parents around 200,000 Won per month for his parents to go out to eat and to buy nice things. *Id.* at 47. Mr. Lee conceded that he gave Decedent more in allowance than Decedent gave him and Mrs. Kim. *Id.* Mr. Lee also testified that Decedent contributed to the household and the family business with his own money that he made from his job, military salary, and from Decedent's savings. *See id.* at 36. Furthermore, Mrs. Kim testified in her deposition that Decedent contributed 3,000,000 Won in renovations to the family home and paid for factory parts for the business. *See id.* at 52.

While portions of the transcript of the deposition may appear to be inconsistent with the declaration in support of the opposition to the summary judgment motion, the court does not find the declaration to be a sham.

### ii. Analysis on 7 GCA § 12109.[8]

Defendants argue that Plaintiffs are not entitled to pecuniary damages because Decedent did not support Mr. Lee and Mrs. Kim financially, Decedent was employed and paid by Mr. Lee's company, Mr. Lee and Mrs. Kim gave Decedent an allowance each month, and lived rent free in their apartment. *See* Defs. Mem. at 10, ECF No. 30. In sum, Defendants allege that Decedent did not financially support Mr. Lee and Mrs. Kim but instead, they supported him. *Id.* Therefore, Defendants argue Mr. Lee and Mrs. Kim did not suffer a pecuniary loss. *Id.* at 10-11. Plaintiffs, on the other hand, argue that they have incurred an immediate pecuniary loss as a result of their son's death. Pls.' Opp'n at 9, ECF No. 35. They allege that Decedent contributed

---

[7] Defendants' Reply to Plaintiffs' Opposition misstates how much Mr. Lee testified that he gave Decedent in allowance. *See* Reply at 1-2, ECF No. 41. Defendants argue Mr. Lee gave Decedent 400,000 Won per month on page 2 of their reply and later state that Decedent was given 300,000 Won per month on page 3 of their reply. Mr. Lee testified at his deposition that he gave Decedent 300,000 Won per month. *See* Ex. D to Berman Decl. at 47, ECF No. 37.

[8] Guam's wrongful death statute was adopted in 1933 by the Naval Government of Guam from section 377 California Code of Civil Procedure. *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 24 (Guam Mar. 5, 2010). In 1978, the Guam legislature amended the statute to reflect California's 1977 version of § 377. *Id.* Guam's current wrongful death statue 7 GCA § 12109 was amended to mirror California's 1977 version of section 377. *Id.* California cases construing that section up until 1992 are instructive for purposes of 7 GCA § 12109. *Id.*

9

to their household. *See* Lee Decl. at ¶ 3, ECF No. 38. Further, as an employee at the family's company, he was paid less. *Id.* With his death, replacing him at the company would be costly. *Id.* at ¶ 4.

Plaintiffs also argue that even if there was no current pecuniary loss, they would still be entitled to their anticipated loss of future support. Pls.' Opp'n at 9, ECF No. 35. Decedent was supposed to take over the family business, and he was expected to provide care and support to his parents in accordance with Korean custom, as his parents age and eventually retire. *Id.*

Plaintiffs believe they are entitled to losses of earnings, services, support, pecuniary benefits, comfort, society, protection, related pecuniary benefits, and loss of reasonable expected benefits. *Id.* at 10. Defendants concede that Mr. Lee and Mrs. Kim are entitled to damages under 7 GCA § 12109 as Decedent's sole heirs stemming from the loss of comfort, protection, and society of Decedent. *See* Defs.' Mem. at 10, ECF No. 30-1. However, because "comfort, society, and protection" and "earnings and services" are intertwined in the determination of pecuniary loss, the court will nonetheless discuss "loss of comfort, society, and protection" herein.

The wrongful death statute, 7 GCA § 12109,[9] was enacted to "afford compensation to the

---

[9] Section 12109 of Title 7, Guam Code Annotated, provides in part that,

> (a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer against the personal representative of such wrongdoer, whether the wrongdoer dies before of after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his or her death, his or her personal representatives. In every action under this Section, such damages may be given as, under all the circumstances of the case, may be just, but shall not include damages recoverable under 19 GCA § 31104. The respective rights of the heirs in any award shall be determined by the court. Any action brought by the personal representative of the decedent pursuant to the provisions of 19 GCA § 31104, may be joined with an action arising out of the same wrongful act or neglect brought pursuant to the provisions of this Section. If an action be brought pursuant to the provisions of this Section, and a separate action arising out of the same wrongful act or neglect be brought pursuant to the provisions of § 956 of the Civil Code, such actions shall be consolidated for trial on the motion of any interested party.

heirs for the pecuniary loss resulting from the death of their relative." *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 25. Pursuant to 7 GCA § 12109, the measure of damages recoverable by heirs or personal representatives is the pecuniary loss suffered because of the death. *Id.*

In *Wilson v. City & Cnty. of S.F.*, 235 P.2d 81, 83 (Cal. Ct. App. 1951), the California Court of Appeals held that the pecuniary loss determination in a wrongful death action for the heirs of the decedent "must . . . presume[] that the financial contributions and benefits would continue . . . during the life expectancy of the survivor." *See also Foerster v. Direito*, 170 P.2d 986, 992 (Cal. Ct. App. 1946) (The measure of pecuniary loss sustained by the mother was inclusive of "the period of time, not only during the son's minority, but also during the term of the life expectancy of the plaintiff.").

Pecuniary loss "permits recovery of awards for loss of contributions for support or future benefits, and loss to plaintiffs of decedent's comfort and society." *U.S. v. Eng.*, 521 F.2d 63, 70 (9th Cir. 1975). It also takes into consideration loss of earnings and services. *Id; see also Fuentes v. Tucker*, 187 P.2d 752, 757 (Cal. 1947).

In *Barnett v. Garrison*, 209 P.2d 426, 428-29 (Cal. Ct. App. 1949), the California Court of Appeals held that the pecuniary loss determination outlined in *Fuentes* applies in a wrongful death action brought by the parents of an eighteen-year-old decedent. The court in *Barnett* explained that the decedent was a healthy and smart girl who gave the money she earned while working in a cannery during her high school years to her parents and that, after high school, when she received her first paycheck from Ford, she headed home to her parents with the paycheck in tow but was killed before she returned home. *Id.* at 428. The court in *Barnett* held

---

    (b)   For the purposes of Subsection (a), heirs mean only the following:

        (1) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of 15 GCA Division 3 (Administration of Decedents" Estates).

that these facts "clearly indicat[e] loss of earnings, society and comfort, [and] a jury should weigh the circumstances relied on by" decedent's parents when determining pecuniary loss. *Id.*

Pecuniary loss may also be based on the heir's reasonable expectation of benefits during the lifetime of the decedent. *Swails v. Gen. Elec. Co.*, 70 Cal. Rptr. 143, 146 (Cal. Ct. App. 1968); *see also Mize v. Atchison, T. & S. F. Ry. Co.*, 120 Cal. Rptr. 787, 799 (Cal. Ct. App. 1975) (holding that pecuniary loss includes deprivation of benefits that could have reasonably been expected by the heirs had the decedent lived and "reasonable expectations should be included [in] the value of advice and training and the value of the deceased['s] society and comfort.").

Additionally, reasonable expectation of benefits by the heirs can stem from a moral obligation placed upon a decedent during their life. *Swails*, 70 Cal. Rptr. at 86 (holding pecuniary loss may be based on a decedent's "reasonable expectation of benefits during the lifetime of decedent which may originate in a purely moral obligation.").

In the instant case, the court finds that there are genuine issues of material fact with respect to whether Decedent financially supported his parents or whether Decedent was fully supported by his parents. Therefore, the court will deny Defendants' request for summary judgment with respect to Plaintiffs' ability to recover damages in the form of pecuniary loss pursuant to 7 GCA § 12109. The court will now discuss the facts that raise genuine issues of material fact.

Decedent was employed by Mr. Lee's company and received around 30,000,000 Won per year.[10] *See* Ex. 2 to Johnson Decl., Tr. at 20, ECF No. 30-3 at 13. Mr. Lee claims that he gave Decedent 300,000 Won per month as an allowance, and that Decedent would spend that allowance partially on buying take-out food and small gifts for Mr. Lee and Mrs. Kim. *Id.* at 14.

---

[10] Defendants' motion for partial summary judgment states Decedent earned 3,000,000 Won per year at his family's business and cites to Mr. Lee's deposition. Defs.' Mem. at 6, ECF No. 30-1. However, upon review of Mr. Lee's deposition, Decedent earned 30,000,000 Won per year from the family company, not 3,000,000 Won per year. *See* Ex. 2 to Defs. Mot. at 13, ECF No. 30-3.

Mr. Lee and Mrs. Kim also claim that Decedent was poised to take over the family business and take care of Mr. Lee and Mrs. Kim as they grew older and eventually retired. *See* Lee Decl. at ¶¶ 5-6, ECF No. 38 and Ex. D to Berman Decl. at 37, ECF No. 37. Mr. Lee testified that Decedent contributed $2,400 to the family home each year. *See* Lee Decl. at ¶ 3, ECF No. 38. Mr. Lee stated that Decedent "paid a lot for renovating our house, interior of the house. So he saved the allowance I gave him and he would give allowance to his mom or to his sisters." *See* Lee Dep. at 35, Ex. D to Berman Decl., ECF No. 37. Mr. Lee explained that Decedent had money from the allowance Mr. Lee gave Decedent, Decedent's salary from the business, the salary Decedent earned from serving in the military and his own savings. *Id.* at 36.

Mr. Lee claims that Decedent contributed to the family business by buying parts for the company in amount of about 20,000,000 Won. *Id.* at 35, 37. Mr. Lee also asserts that it is customary for unmarried children to reside with their parents in South Korea. *Id.* Upon Decedent's death, Mr. Lee needed to hire a substitute employee to take Decedent's place at a higher wage than what he paid Decedent. *See* Lee Decl. at ¶ 3, ECF No. 38. Mr. Lee and Mrs. Kim, by and through the Declaration of their counsel provided an expert report by Joseph P. Bradley, Ph.D., which calculated an estimate of the present value of future earnings of Decedent. *See* Ex. C to Berman Dec. at 30, ECF No. 37. The report found that with "a 2019 salary of $24,000 annually and 38 years remaining until full retirement age, the discounted present value of [Decedent's] future earnings is $1,450,685.49."[11] *Id.* Mrs. Kim noted in her deposition that Decedent would help with all the chores in the home, for example, Decedent bought groceries and would cook. See Ex. D to Berman Decl., ECF No. 37 at 53.

On the other hand, during Mr. Lee's deposition, he was asked whether Decedent paid for

---

[11] The full report is not attached, only the letter stating the conclusion. *See* Ex. C to Berman Dec. at 30, ECF No. 37. The letter states that there is an attachment of the underlying official South Korea statistics used to calculate the present value of future earnings, but the attachment is absent. *Id.*

13

rent or utilities to which Mr. Lee replied that Decedent did not pay for rent or utilities. *See* Ex. 2 to Johnson Decl., Tr. at 20, ECF No. 30-3 at 12. Defendants' counsel asked Mr. Lee to clarify why he wrote that Decedent contributed $1,800 per month in an answer to an interrogatory that asked Plaintiffs to "[s]tate the total amount of rent and utilities paid by decedent for each and every place decedent lived each year from and including the year 2014 to the date of the incident." *Id.* at 10. Defendants' counsel explained to Mr. Lee that they were asking for clarification because Mr. Lee testified that Decedent did not pay for rent and utilities, but the interrogatory answer would imply that Decedent did contribute to rent and utilities. *Id.* at 11. Mr. Lee replied that it "was not what he meant by the answer" and confirmed that Decedent did not pay rent. *Id.* at 11-12. Mr. Lee also testified that Decedent worked for his company, he decided how much Decedent was paid, and that he gave his son an allowance. *Id.* at 13. Mr. Lee explained that he gave Decedent about 300,000 Won in allowance per month and that Decedent would give him and Mrs. Kim about 200,000 Won in allowance for dinner and gifts each month. *Id.* at 14. Mr. Lee testified that he gave Decedent more allowance per month than Decedent gave him. *Id.* When asked whether Decedent supported him and Mrs. Kim financially Mr. Lee answered no. *Id.* at 15.

Based on the evidence presented to the court, the court finds that genuine issues of material fact exist as to whether Decedent financially supported his parents or not and, therefore, the court denies Defendants' request for summary judgment with respect to Plaintiffs' ability to recover damages in the form of pecuniary loss pursuant to 7 G.C.A. § 12109.

### d. CONCLUSION

Defendants' Motion for Partial Summary Judgment is **GRANTED** in part and **DENIED** in part.

1. Decedent's Estate is not entitled to pain and suffering under 19 GCA 31104. This

issue is denied as moot.

2. Decedent's Estate is not entitled to punitive and/or exemplary damages. Defendants' partial summary judgment is granted on this issue.

3. Decedent's heirs may be entitled to pecuniary loss under 7 GCA § 12109. Defendants' partial summary judgment is denied on this issue.

The Clerk of Court shall enter judgment in accordance with the court's ruling.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
  **Chief Judge**
  **Dated: September 30, 2023**